UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZAKARIA I. MUSALLAM

        **Plaintiff,**                              CIVIL ACTION NO. 06-CV-10392-DT

        vs.                                        DISTRICT JUDGE MARIANNA O. BATTANI

**COMMISSIONER OF**                        MAGISTRATE JUDGE MONA K. MAJZOUB
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** (Docket # 10), that Plaintiff's Motion for Summary Judgment be **DENIED** (Docket # 9), and that Plaintiff's Complaint be **DISMISSED**.

**II.    PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Zakaria Musallam filed an application for Disability Insurance Benefits (DIB) on May 8, 2003. (Tr. 49-51). He alleged he had been disabled since April 30, 2003. *Id.* Plaintiff's claims were initially denied in June 2003. (Tr. 32-36). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ). (Tr. 37-38). A hearing took place before ALJ Karen Goheen on January 21, 2005. (Tr. 258-95). Plaintiff was represented at the hearing. (Tr. 29-31, 258). The ALJ denied Plaintiff's claims in an opinion issued on August 26, 2005. (Tr. 16-22). The Appeals Council denied review of the ALJ's decision on January 12, 2006 and the ALJ's decision is now the final decision of the

Commissioner. (Tr. 4-15). Plaintiff appealed the denial of his claim to this Court and both parties have filed motions for summary judgment.

### III. MEDICAL HISTORY

Plaintiff had a surgical hernia repair in September 2001. (Tr. 191-220). There are no documents in the record describing treatment for Plaintiff's post-operative course.

An x-ray taken of Plaintiff's right shoulder in December 2002 showed mild degenerative changes. (Tr. 110). Plaintiff was seen by Dr. Robert Popovski on April 3, 2003 complaining of intermittent shoulder and lower back pain and seeking work restrictions. (Tr. 100). An examination showed a decreased range of motion ("ROM") in Plaintiff's shoulders, more pronounced on the right, and diffuse shoulder and lower back tenderness. *Id.* Dr. Popovski advised no lifting more than 20 pounds and no excessive bending due to his lower back and shoulder pain. (Tr. 83). X-rays taken of Plaintiff's cervical spine on April 17, 2003 showed diffuse degenerative changes. (Tr. 96). Specifically, there was diffuse minimal to moderate intervertebral osteochondrosis between C2-C7 with disc space narrowing being the greatest at C4-C5. There was foraminal encroachment at all levels between C3-C7 bilaterally. (Tr. 96).

Dr. Joseph Burtka subsequently noted on April 24, 2003 that Plaintiff had back, shoulder, and neck pain since sustaining a work-related injury. X-rays showed degenerative arthritis, for which he was taking medication, and Plaintiff was to begin physical therapy. (Tr. 92, 95). Dr. Burtka stated that the constant lifting and repetitive use of his arms could be the causal effect of Plaintiff's pain. (Tr. 92).

Plaintiff's physical therapy sessions began on May 28, 2003. (Tr. 227-243). Plaintiff's therapist noted at his initial evaluation that Plaintiff had right shoulder tenderness. The therapist advised Plaintiff to "avoid sudden and jerky movement of the right shoulder." (Tr. 228). Plaintiff was subsequently discharged from physical therapy after he failed to appear for treatment. (Tr. 236).

An enhanced examiner, Steven May, was asked to review Plaintiff's file in June 2003. The examiner concluded that Plaintiff could: (1) lift 20 pounds occasionally and 10 pounds frequently; (2) stand/walk for about 6 hours in an 8-hour workday; (3) sit for about 6 hours in an 8-hour workday; and (4) frequently climb, balance, stoop, kneel, crouch, and crawl. (Tr. 85-86). He also indicated that Plaintiff had no manipulative or environmental limitations. (Tr. 87-88).

Plaintiff was examined by Dr. Gregory Zemenick in August 2003 for complaints of right and left shoulder pain. (Tr. 248). Dr. Zemenick found impingement of both shoulders. He recommended an MRI be taken of the right shoulder. Dr. Zemenick also noted that Plaintiff had cervical spine osetoarthritis and degenerative disc disease with mild C7 radiculopathy and that therapy had not worked. The chart reflects that Plaintiff rejected an injection so medication was prescribed instead. (Tr. 247). A subsequent MRI of Plaintiff's right shoulder showed a small full-thickness tear of the supraspinatus tendon and a deep partial-thickness tear involving the infraspinatus tendon.[1] (Tr. 246).

Plaintiff also sought treatment from Dr. Gerald Stein on January 29, 2004 and February 5, 2004 for pain on the ball of his right foot which Plaintiff claimed only occurred when driving for more than 1 to 2 hours. (Tr. 250-255). Dr. Stein reported on February 6, 2004 that Plaintiff's right foot demonstrated normal pulsation, intact sensations, and equal and strong deep tendon reflexes. Plaintiff had a positive compression test for Morton's neuroma[2] third interspace and pain on palpation of the third plantar aspect of his right foot. Dr. Stein noted that Plaintiff's x-rays were unremarkable. (Tr. 256). Plaintiff had been given podiatric padding and two steroid injections, which provided moderate

---

[1] Plaintiff testified that Dr. Zemenick recommended surgery for his right shoulder. The only reference to a possible surgery in the record aside from Plaintiff's testimony is a note stating that Plaintiff was scheduled for a right shoulder scope in March 2004. (Tr. 248).

[2] A "neuroma" is "a tumor or mass growing from a nerve and usually consisting of nerve fibers." *Merriam Webster's Medical Desk Dictionary* (1993) 473.

relief. Dr. Stein recommended that conservative treatment be continued with surgical excision of the neuroma in the future if that treatment failed. (Tr. 256-57).

## IV. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff was 59 years old when he testified before the ALJ and he had finished high school overseas. (Tr. 262-64). Plaintiff told the ALJ that he stopped work as a salesman and delivery driver in April 2003 because could not walk and his shoulders and back hurt all of the time. (Tr. 264, 266). Plaintiff stated that he took Vicodin at night when his pain was bad but that he did not take it all of the time because it was too expensive. (Tr. 266). He also testified that he took Alprasolum and Xanax but not every night and he was no longer taking Celebrex. (Tr. 266-67). Plaintiff also indicated that he continued to take non-prescription Alleve and Motrin for his arthritis. (Tr. 267).

Plaintiff further testified that he had surgery scheduled for his right shoulder to repair a torn rotator cuff but he did not have it done due to lack of money and insurance. (Tr. 267). He further stated that he had pain in his left shoulder and neck and that his feet were bothering him. (Tr. 268, 269). Plaintiff also had a hernia, which was repaired. Dr. Burka thereafter told Plaintiff not to lift more than 20 pounds and not to bend down a lot. *Id.*

Plaintiff also elaborated upon the symptoms caused by his impairments. He indicated that he had constant pain from his neck down to his elbow on the right side. Lifting, grasping, and moving objects worsened this pain as did reaching overhead. (Tr. 276-77, 283). He also could not reach behind him with his right arm. (Tr. 282). Plaintiff indicated that he had similar symptoms with his left shoulder but not as severe. (Tr. 277). Plaintiff testified that his neck pain was connected to his shoulder pain and that his lower back would sometimes hurt, especially when getting out of bed. (Tr. 278). He also stated that he had pain on the bottom of his right foot, which

was aggravated by driving and walking. *Id.* Plaintiff testified that he had pain in his lower back when sitting. (Tr. 279). He would sometimes use a cushion behind his back when driving and he estimated that he could sit in a chair for 1 to 2 hours before needing to change positions. *Id.* Plaintiff stated that he sometimes had difficulty standing but believed he could stand for a couple of hours before needing to rest. (Tr. 279). He also stated that he could walk for a couple of blocks. (Tr. 280). Plaintiff's back and shoulder sometimes made it difficult for him to tie his shoes. He could not always lift his glasses to his face with his right arm due to his shoulder pain and he could not lift much weight with his left arm either. (Tr. 281). Plaintiff could write with his right hand for about ½ hour. (Tr. 283). He also testified that he did not sleep well due to pain and therefore needed to nap every day for about 10 to 30 minutes. (Tr. 284).

When asked about his daily activities, Plaintiff testified that he sometimes needed his wife's help to get dressed, especially when bending to put on his pants. He was able to pull a sweater over his head or pull his arms through a jacket sleeve but it was very painful. (Tr. 284-85). However, Plaintiff could button his shirts. *Id.* Plaintiff also required his wife's help with grooming although Plaintiff was able to shave himself. (Tr. 285). He did not do any household chores such as cooking, cleaning, laundry, grocery shopping, or dishwashing. (Tr. 285-86). Plaintiff did not engage in social activities or visit with friends or family unless they came to him and he would watch television all day. (Tr. 286-87).

**B.     Vocational Expert's Testimony**

Lawrence Zatkin, a rehabilitation counselor, testified as a vocational expert ("VE") at the hearing. Mr. Zatkin testified that Plaintiff's past work was that of a field salesman and an account representative but that there were various titles for the job. (Tr. 291). He indicated that Plaintiff's work required him to not only sell but to deliver products, that the demands of his specific job were

categorized as medium labor, and that his skills were related to Plaintiff's type of sales job although the skills were not necessarily product specific. (Tr. 291). Mr. Zatkin also testified that Plaintiff's work under ordinary circumstances would range from light to medium labor depending upon the specific product involved. *Id.*

The ALJ asked Mr. Zatkin if a hypothetical individual could perform the above-described past work if that individual was of Plaintiff's age, education, and work experience and he: (1) could lift no more than 20 pounds occasionally and 10 pounds frequently, primarily using the non-dominant, upper extremity; (2) had no total limitations on his ability to sit, stand, or walk; (3) needed to avoid postural activities requiring the use of two hands, climbing ropes or ladders, and crawling; (4) could not reach above shoulder level or reach behind his body; and (5) needed to avoid extreme cold. (Tr. 292). Mr. Zatkin testified that such a hypothetical person could not perform the past work as Plaintiff performed it. *Id.* The ALJ then asked Mr. Zatkin whether the hypothetical individual could perform the job as it was generally done. Mr. Zatkin responded as follows:

> Well there are jobs that would allow a person to do this type of work with no requirement to lift over 20 pounds. The issue of full range of motion of the upper extremities may be more problematic if they're required to stock the shelves with the products because they can certainly go above the shoulder without control. (Tr. 292).

However, Mr. Zatkin further testified that a large percentage of jobs for field sales, account representatives, or sundry delivery would not require stocking the shelves and in some cases would not even require transfer of goods from the truck to the store. (Tr. 292-93).

## V. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

### B. FRAMEWORK OF SOCIAL SECURITY DISABILITY DETERMINATIONS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

    (1)    he was not presently engaged in substantial gainful employment; and

    (2)    he suffered from a severe impairment; and

    (3)    the impairment met or was medically equal to a "listed impairment;" or

> (4) he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

C.  **ARGUMENTS**

The ALJ found that Plaintiff had the RFC to perform a restricted range of light work[3] with the ability to use the non-dominant upper extremity but with limitations of no climbing or crawling, no postural activities that required the use of both hands, no work above the shoulder level, no work that required reaching behind the body, and no exposure to extreme cold. (Tr. 21). Plaintiff challenges this RFC finding, alleging that it was improperly based upon the assessment of a non-examining medical consultant.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Relying upon *Frankl v. Shalala*, 47 F.3d 935 (8th Cir. 1995), Plaintiff asserts that the ALJ erred by solely relying upon the non-examining consultant's opinion to craft her RFC finding because the consultant did not base his assessment upon a complete medical record.

In *Frankl*, the plaintiff asserted that he had been disabled since 1990. The state submitted assessment forms from non-examining physicians that indicated Plaintiff was able to perform light work. These forms were completed in January 1991. The plaintiff did not appear before the ALJ for a hearing until December 1991. The Court determined that state agency assessment forms did not provide substantial evidence to support the ALJ's RFC finding. However, the Court's finding was premised upon the absence of any other medical evidence regarding the plaintiff's RFC at the time of the 1991 hearing. *Frankel*, 47 F.3d at 938; *see also Anderson v. Shalala*, 51 F.3d 777, 779-80 (8th Cir. 1995). The *Frankl* court did not take issue with the ALJ's reliance upon the assessment forms as an indicator of the plaintiff's condition as of the date they were completed. Rather, the court expressed concern for the lack of any medical evidence to support the ALJ's RFC finding after that date.

The *Frankel* case, therefore, does not stand for Plaintiff's proposition that an ALJ can never rely upon an assessment made by a non-examining consultant or that an ALJ's RFC finding is erroneous simply because a non-examining consultant's assessment was not based upon the entire medical record. Indeed, such a proposition would contradict the regulations, which provide that an ALJ must evaluate all of the medical opinion evidence regardless of its source, including the opinions of non-examining medical consultants. 20 C.F.R. § 404.1527(d), (f); *see, e.g. Coombs v. Comm'r of Soc. Sec.*, 459 F.3d 649, 651 (6th Cir. 2006)(en banc).

The ALJ properly conducted an independent analysis of the medical evidence of Plaintiff's condition that was submitted both before and after the June 2003 assessment was completed and

considered the examiner's RFC assessment but thereafter adopted an RFC finding that was more restrictive.

The state examiner found that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, had no restrictions in his ability to use his right arm for carrying, lifting, pushing, or pulling, and had no postural limitations. The ALJ noted that x-rays showed degenerative changes to Plaintiff's right shoulder in April 2003 and that a subsequent MRI showed tears in the tendons of Plaintiff's right shoulder. The ALJ also recognized that Dr. Burtka had restricted Plaintiff to no repetitive lifting or use of the right arm. Therefore, the ALJ, contrary to the state examiner's assessment, found that Plaintiff had the RFC to perform work that would allow him to use his left, non-dominant hand and that would not require Plaintiff to climb, crawl, engage postural activities in which he need to use both hands, reach above the shoulder level, or reach behind the body.

The ALJ also considered the objective, medical evidence relevant to Plaintiff's left shoulder, back, and right foot impairments and Plaintiff's allegations regarding the pain and limitations associated with those impairments, which the ALJ determined were not fully credible.

"It is well-established that pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). A claimant's statements as to pain, however, will not alone establish that he is disabled. *See Walters*, 127 F.3d at 531; see also 20 C.F.R. § 404.1529(a). The Sixth Circuit has developed a two-prong test to evaluate a claimant's assertions of disabling pain:

> First, we must examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir.1 986)); see also 20 C.F.R. § 404.1529(a).

Notwithstanding the above, the ALJ cannot rely solely on the lack of objective medical evidence because the regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). In addition to the available objective medical evidence, the ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. See 20 C.F.R. § 404.1529(c)(3); see also *Felisky v. Bowen*, 35 F .3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

Moreover, because pain is a largely subjective matter, an ALJ may properly consider the claimant's credibility in evaluating her complaints of disabling pain. *See Walters*, 127 F.3d at 531. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id.* Furthermore, an ALJ's findings based on the credibility of the claimant are to be accorded great weight and deference. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *See id.*

The ALJ properly applied these standards. First, she determined that Plaintiff did have severe medical conditions. Specifically, she found that Plaintiff had a left shoulder impingement, cervical spine osteoarthritis, and neuroma of the right foot. However, the ALJ concluded that the evidence of record

did not establish that these impairments could reasonably be expected to give rise to pain so severe that it precluded Plaintiff from performing the limited range of light work as set forth in her RFC.

The ALJ noted that there were no diagnostic tests substantiating significant limitations regarding Plaintiff's left arm and shoulder. There were also no clinical findings showing muscle atrophy or neurological defects. Indeed, the only documented clinical findings regarding the limitations of Plaintiff's left arm are found in a notation by Dr. Popovski in April 2003 that Plaintiff's range of motion was "decreased" to an unspecified degree. Nevertheless, Dr. Popovski concluded that Plaintiff could lift 20 pounds, which is a limitation consistent with the ALJ's RFC finding. There is also no indication that Plaintiff received treatment specific to his left shoulder. The physical therapy undertaken by Plaintiff pertained to his right shoulder only and there was no discussion of surgical intervention.

The ALJ also noted that although Plaintiff had been diagnosed with a neuroma in his right foot, Dr. Stein recommended only conservative treatment and there was no evidence of any treatment after February 2004. Plaintiff's sensations in his foot were intact and he had normal reflexes. There was also no evidence that Plaintiff's gait was affected in any manner. Dr. Stein also commented that the x-rays of Plaintiff's foot were unremarkable. Furthermore, none of Plaintiff's physicians had opined that Plaintiff was limited in his ability to sit, stand, or walk.

Plaintiff also notes that the ALJ improperly rejected his testimony regarding his difficulties bending, which was supported by the restriction imposed by Dr. Popovski that Plaintiff not engage in excessive bending. Although the ALJ did not specifically discuss Dr. Popovski's restriction, the ALJ determined that there was no objective evidence supporting Plaintiff's allegation of low back pain. The ALJ did not discuss Dr. Popovski's restriction. However, an ALJ is not required to discuss every piece of evidence contained in the record. *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) ("a written evaluation of every piece of testimony and submitted evidence is not required"); *Walker v. Bowen*, 834

F.2d 635, 643 (7th Cir. 1987) (ALJ need only articulate his rationale sufficiently to allow meaningful review). There is also no evidence establishing that Dr. Popovski was a treating physician to whom the ALJ was required to defer. In fact, the record only shows that Plaintiff saw Dr. Popovski on one occasion. Furthermore, an ALJ is only required to defer to opinions that are supported by the objective, medical evidence. *See* 20 C.F.R. § 404.1527(d)(2)(discussing when deference is owed to a treating physician's opinion); 20 C.F.R. § 404.1502 (the regulations define a treating physician as a physician who has provided medical treatment or evaluation and "who has, or has had, an ongoing treatment relationship with" the claimant.) In any event, the record contains no evidence of diagnostic testing that demonstrates an impairment of Plaintiff's lower back.[4] There was also no evidence of any muscle spasms, significant muscle atrophy, or neurological deficits, which are typical indicators of severe pain. There was also no evidence of positive straight leg raising tests or decreased range of motion. *See Jones v. Sec'y of Health & Human Srvs.*, 945 F.2d 1365, 1369-70 (6th Cir. 1991); *Rivera v. United States*, 1999 WL 316835 *1 (2d Cir. 1999) (holding that positive straight leg-raising test was objective medical evidence of serious back and neck injuries). Dr. Popovski only noted that Plaintiff's lower back pain was intermittent and that he had diffuse tenderness in his lower back. (Tr. 100).[5] Plaintiff did not receive any treatment for his back other than medication. (Tr. 247).

Plaintiff also asserts that substantial evidence does not support the ALJ's determination that he could perform his past, relevant work. At the fourth step of the sequential evaluation process, Plaintiff must prove that he was unable to perform his past relevant work and that he was unable to return to his former type of work as generally performed. Social Security Ruling ("SSR") 82-61; *Bowen v. Yuckert*,

---

[4] X-rays and an MRI were only taken of Plaintiff's cervical spine and they were taken after Dr. Popovski imposed his restrictions.

[5] Dr. Popovski's treatment records only indicate a restriction against lifting more than 20 pounds. (Tr. 99-100).

482 U.S. 137 (1987); *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987). A VE's testimony is often elicited in response to an ALJ's hypothetical question posing a person with certain limitations. The hypothetical question need only include the alleged limitations of the claimant that the ALJ accepts as credible and that are supported by the evidence. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ may rely on the VE's testimony that such a hypothetical person can perform a certain job. *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987).

The ALJ's hypothetical question did not include all of Plaintiff's alleged limitations, but it did include all the limitations that the ALJ found credible and supported by the evidence. When the ALJ posed the hypothetical question, the VE indicated that the hypothetical person could not perform Plaintiff's past relevant work as Plaintiff had performed it. However, the VE also testified that Plaintiff's prior work as generally performed involved light to medium work and that a large percentage of that work could accommodate Plaintiff's restrictions.

Nevertheless, Plaintiff contends that the VE's testimony does not constitute substantial evidence because there remains an unresolved conflict between the VE's testimony and that of the Dictionary of Occupational Titles ("DOT"). Before an ALJ may rely upon a VE's testimony, the ALJ must ascertain whether any conflicts exist between the jobs identified by the VE and the DOT's classification of these jobs. Occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT. SSR 004-p, 2000 WL 1898704 *2. SSR 00-4p places an affirmative duty upon an ALJ to: (1) ask the VE whether any conflicts exist between the expert's testimony and the DOT; (2) "elicit a reasonable explanation" for any such conflict; and (3) thereafter resolve any such conflicts. SSR 00-4p; *see e.g., Teverbaugh v. Comm'r of Soc. Sec.*, 258 F. Supp. 2d 702, 705-06 (E.D. Mich. 2003); *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 652 (E.D. Mich. 2004).

The VE categorized Plaintiff's prior work as that of field salesman or account representative and, upon questioning by the ALJ, testified that his description of Plaintiff's prior work did not conflict with the DOT and the Selected Characteristics of Occupations ("SCO"). Plaintiff asserts that the DOT does not identify any jobs titled field salesman or account representative. He therefore asserts that the VE's testimony was actually in conflict with the DOT and that the ALJ erred by not resolving that conflict. Plaintiff points to no authority that holds that a conflict necessarily arises when the exact title of a claimant's job as testified to by the VE is not contained within the DOT.[6] In any event, SSR 00-4p does not address what to do when a conflict is not made apparent to an ALJ and it does not impose a duty upon an ALJ to "conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Martin v. Comm'r of Soc. Sec.*, 2006 WL 509393 **4-5 (6th Cir. 2006) (unpublished). The ALJ, in compliance with SSR 00-4p, asked the VE whether his testimony was consistent with the DOT, to which the VE responded affirmatively. This testimony is uncontradicted. The burden at step four of the sequential analysis rests with the claimant. Given the uncertainty that any conflict existed between the VE's testimony and the DOT, the VE's uncontradicted statement that his testimony was consistent with the DOT, and the lack of any perceived violations of SSR 00-4p, the Court concludes that no error occurred when the ALJ relied upon the VE's testimony as substantial evidence that Plaintiff could his past work as generally performed in the national economy.

Plaintiff further argues that the VE did not testify as to the percentage of jobs performed in the national economy that Plaintiff could perform and therefore substantial evidence does not support the ALJ's step four determination. However, Defendant does not bear that burden at stage four of the

---

[6] The VE testified that Plaintiff's past work had various other job titles. However, he did not provide those titles or the DOT code numbers to which he was referring. Without this information, the Court cannot independently ascertain whether, in fact, a conflict actually exists between the VE's testimony and the DOT.

-15-

sequential analysis. *See* SSR 82-40 (emphasizing that at the fourth level of the disability analysis "[i]t is only after a claimant proves that he or she is not able to do his or her previous work that the burden shifts to the Secretary to show that there is work available in the U.S. national economy which the claimant can do."). In *Garcia v. Secretary of Health & Human Servs.*, 46 F.3d 552, 557 (6th Cir. 1995), referred to SSR 82-40 and SSR 82-61 in reaching the conclusion that "[t]he Secretary will not consider whether past work as actually performed is currently available in significant numbers in the national economy." Based upon the foregoing, the Court concludes that the ALJ did not err in finding that Plaintiff retained the RFC to perform his past work given the VE's testimony that such a job could be performed by a person with Plaintiff's RFC.

**VI.     RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence. Defendant's Motion for Summary Judgment (Docket # 10) should be **GRANTED**. Plaintiff's Motion for Summary Judgment (Docket # 9) should be **DENIED** and his Complaint **DISMISSED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: January 22, 2007                    s/ Mona K. Majzoub
                                           **MONA K. MAJZOUB**
                                           **UNITED STATES MAGISTRATE JUDGE**

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 22, 2007                    s/ Lisa C. Bartlett
                                           **Courtroom Deputy**